|  |  |  |
|---|---|---|
| Jeffrey Weisen, | ) | File No.: 19-cv-01637-DWF-DTS |
|  | ) | Judge: Donovan W. Frank |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **DEFENDANTS'** |
| vs. | ) | **MEMORANDUM IN SUPPORT** |
|  | ) | **OF THEIR MOTION TO** |
| ANDALE 7700 INC. d/b/a | ) | **DISMISS PLAINTIFF'S FIRST** |
| Andale Taqueria and Andale Taqueria | ) | **AMENDED COMPLAINT AND** |
| Y Mercado and 7700 Partners LLC, | ) | **FOR ATTORNEYS' FEES AND** |
|  | ) | **COSTS** |
| Defendants. | ) |  |
|  | ) |  |

## <u>INTRODUCTION</u>

Defendants ANDALE 7700 INC. d/b/a Andale Taqueria ("Andale Taqueria") and

Andale Taqueria Y Mercado ("Andale Mercado") and 7700 Partners LLC (collectively,

"Defendants") bring this Motion to Dismiss Plaintiff's First Amended Complaint and for

Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, and

28 U.S.C. § 1927 ("Motion") because there are no harms for the Court to address. As

explained below, the violations of the Americans with Disabilities Act ("ADA") that

Jeffrey Weisen ("Plaintiff") propounds in his First Amended Complaint do not exist. Put

simply, there is no recourse for Plaintiff to seek in a judicial forum. This does not mean

that Defendants take violations of the ADA lightly. To the contrary, Defendants are

dedicated to ensuring that their property complies with the ADA, as evidenced by their

swift actions and comprehensive renovations completed immediately upon becoming

aware of an issue. Because there is simply no harm to remedy, Defendants respectfully

request that the Court grant Defendants' Motion, and dismiss Plaintiff's First Amended Complaint with prejudice.

## FACTUAL BACKGROUND

On May 23, 2019, Plaintiff served his original Complaint ("Original Complaint") on Defendants. (ECF No. 1-1) Among the allegations in his Original Complaint, Plaintiff claimed that he was unable to visit the Andale Tequeria and Mercado located at 7700 Nicollet Avenue South, Richfield, Minnesota ("Property") at some point "within the applicable limitations period"[1] because of several alleged architectural barriers at the Property. (*Id.* at ¶¶ 19, 21) Defendants took prompt and diligent action as soon as they learned of the alleged defects. (Declaration of Fernando Mellado-Barboza ("Mellado-Barboza Decl."), ¶¶ 4–7) By June 23, 2019, Defendants removed each and every alleged architectural barrier at the Property. (*Id.* at ¶ 7; Declaration of Julee Quarve-Peterson ("Quarve-Peterson Decl."), ¶¶ 8–9 & Ex. B)

On June 28, 2019, because Defendants removed all of the alleged architectural barriers and Plaintiff's Original Complaint was moot, Defendants filed a Motion to Dismiss the Original Complaint for Lack of Subject Matter Jurisdiction ("Original Motion to Dismiss"). (Dkt. Nos. 4–11)[2] On July 19, 2019, in response to Defendants' Original

---

[1] Plaintiff mysteriously does not plead as to when he allegedly visited the Property or where he actually lives, which is relevant in determining the likelihood of Plaintiff actually returning to the Property.

[2] It must be noted that Defendants requested multiple times that Plaintiff either dismiss the Original Complaint or advise Defendants of why Plaintiff's claims were not moot so that the Defendants did not have to incur the attorneys' fees and costs associated with a motion to dismiss and the Court did not need to be burdened with such motion practice, but Plaintiff failed to substantively respond. (Windler Decl., ¶¶ 2–7 & Exs. 2–3).

Motion to Dismiss, Plaintiff filed his First Amended Complaint. (ECF No. 12) The vast majority of the allegations in Plaintiff's First Amended Complaint are identical to those in his Original Complaint. (*Compare* ECF No. 1-1 *with* ECF No. 12) The exception to these similarities is Paragraph 21(b) of the First Amended Complaint, which rewords a few of the previously-alleged architectural barrier allegations, and adds one new allegation regarding the slope of the handicap parking space and/or access aisle. (ECF No. 12, ¶ 21)

On July 19, 2019, the same day that Defendants received the First Amended Complaint, Defendants hired an auditor specialized in ADA compliance to confirm that the slope of the handicap parking space and access aisle have a slope of less than 2%, and are therefore ADA-compliant as they currently exist. (Mellado-Barboza Decl., ¶ 8; Quarve-Peterson Decl., ¶ 11(a) & Ex. C) At that same time, Defendants also had the ADA auditor confirm that the remaining alleged barriers in the First Amended Complaint do not exist, and the Property is therefore compliant with the ADA. (Mellado-Barboza Decl., ¶ 8; Quarve-Peterson Decl., ¶¶ 10–11)

## ARGUMENT

## I.    LEGAL STANDARDS

"Under Article III of the United States Constitution, the jurisdiction of federal courts extends only to actual cases and controversies." *Davis v. Scheman Dev., LLC*, No. 15-CV-3041 (WMW/KM), at 4–5 (D. Minn. Feb. 24, 2017) (citing U.S. Const. art. III, § 2, cl. 1; *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994)). "Questions of standing and mootness implicate the court's subject-matter jurisdiction." *Id.* (citing *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 739 (8th Cir. 2005);

*Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002)).  A case is therefore properly dismissed as moot if it has lost its character as a present, live controversy.  *St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of St. Louis, Mo.*, 96 F.3d 323, 329 (8th Cir. 1996) (quoting *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982)); *see also ABF Freight Sys., Inc. v. Int'l Broth. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) ("Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction.").

"When deciding a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a district court 'must distinguish between a facial attack and a factual attack.'"  *Scheman Dev.,* No. 15-CV-3041 (WMW/KM), at 4 (internal quotation marks omitted) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).  On a factual attack under Rule 12(b)(1) motion—unlike a Rule 12(b)(6) motion— the Court may consider matters outside the pleadings without converting the motion into a summary-judgment proceeding.  *Sawczyn v. BMO Harris Bank Nat. Ass'n*, 8 F. Supp. 3d 1108, 1110–11 (D. Minn. 2014).  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also ABF Freight Sys., Inc.*, 645 F.3d at 958 ("No presumptive truthfulness attaches to the plaintiff's allegations of jurisdiction.").  Once challenged, the plaintiff bears the burden of proof to demonstrate that jurisdiction does, in fact, exist.  *Osborn*, 918 F.2d at 730 (quoting *Mortensen*, 549 F.2d at 891).

## II.  THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AS MOOT.

The Court should dismiss Plaintiff's claims as moot because Defendants have removed all of the architectural barriers complained of in the Original Complaint and the First Amended Complaint, and there is no harm left for the Court to remedy.

It is axiomatic that "[p]rivate individuals cannot recover monetary damages under the ADA." *APS v. U.S. Bank*, 2009 WL 4723311, at *2 (D. Minn. Dec. 2, 2009); *accord Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858, 867 (D. Minn. 2019) ("But as addressed above, Title III of the ADA does not permit a private plaintiff to recover damages."). Rather, a "plaintiff may recover only injunctive relief—and not damages— under Title III of the ADA." *Davis v. Queen Nelly, LLC*, 2016 WL 5868066, at *1 (D. Minn. Oct. 6, 2016); *see also Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006); *Border Foods, Inc.*, 361 F. Supp. 3d at 867.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Scheman Dev.,* No. 15-CV-3041 (WMW/KM), at 6 (internal quotation marks omitted) (citing *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)). It is up to the plaintiff to satisfy the court that relief is needed. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). As a general matter, if it becomes clear at any time that a federal court can no longer grant effective relief, the case is moot. *Scheman Dev.,* No. 15-CV-3041 (WMW/KM), at 6 (citing *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam)). Put differently, where "none of the violations alleged in the complaint remain, the complaint is moot." *Davis v.*

*Morris-Walker, Ltd*, CV 17-1270 (DSD/FLN), 2017 WL 6209825, at *2 (D. Minn. Dec. 7, 2017).

Although voluntary cessation by the defendant of the alleged conduct will not always render a suit moot, such cessation will moot the case and deprive the court of jurisdiction where the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated.[3]  *W. T. Grant Co.*, 345 U.S. at 633; *Hempstead Cty. Hunting Club, Inc. v. Sw. Elec. Power Co.*, 558 F.3d 763, 767 (8th Cir. 2009) ("A claim for injunctive relief may become moot if challenged conduct permanently ceases.")  "ADA claims are moot when a defendant has presented evidence that modifications to its property have remedied the ADA violations identified in the complaint."  *Scheman Dev.*, No. 15-CV-3041 (WMW/KM), at 7 (citing *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451–53 (E.D.N.Y. 2015); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97-99 (D.D.C. 2007)).  Where the "record before the Court clearly demonstrates that [Defendant] has

---

[3] Notably, Plaintiff has also failed to carry his burden to allege that he is in danger of sustaining some direct injury in the future, as required for standing.  *See Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011) ("[Plaintiff] has failed to show that she is 'likel[y] to visit the [zoo] in the imminent future.' . . . She has failed to show an adequate injury in fact, and accordingly lacks standing to challenge the waiver of tort liability the zoo enacted after her injury.").  Indeed, Plaintiff has not provided the actual address of his residence, or any legitimate description thereof showing that he would, in fact, be likely to patronize the Property in the future.  Rather, Plaintiff simply alleges that he lives "near" the Property and "intends to patronize the facility in the future."  (ECF No. 12, ¶ 32)  This failure is particularly striking given the fact that Defendants brought these pleading deficiencies to Plaintiff's attention on June 28, 2019, when they filed their Original Motion to Dismiss, and Plaintiff nevertheless failed to take any action to cure these pleading defects in his First Amended Complaint.  Because it is well-established that "[i]ntent to return to the place of injury 'some day' is insufficient" to show a likelihood of further harm, Plaintiff's First Amended Complaint should be dismissed on these grounds.  *Meagley*, 639 F.3d at 391; *see also Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000).

remedied the ADA violations alleged in the [] complaint," a finding of mootness is proper. *Border Foods, Inc.*, 361 F. Supp. 3d at 866.

When determining whether there is a reasonable expectation that the wrong will be repeated, the Court considers the fact that the "capable of repetition yet evading review rule is an <u>extraordinary and narrow</u> exception to the mootness doctrine." *Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999) (emphasis added); *see also Minn. Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999); *Wattleton v. Simon*, 2017 WL 3447127, at *4 (D. Minn. July 14, 2017), *report and recommendation adopted*, 2017 WL 3446773 (D. Minn. Aug. 10, 2017). It only applies in "exceptional situations," when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, *and* (2) there is a reasonable expectation the complaining party will be subject to the same action again. *Mo. ex rel. Nixon v. Craig*, 163 F.3d 482, 485 (8th Cir. 1998); *Randolph*, 170 F.3d at 856. "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W. T. Grant Co.*, 345 U.S. at 633. Thus, a "mere 'physical or theoretical possibility' is insufficient" to invoke the capable of repetition yet evading review rule. *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1211 (8th Cir. 1992); *see also Border Foods, Inc.*, 361 F. Supp. 3d at 866 (granting dismissal where plaintiff could provide no legitimate reason for believing that the architectural barriers would recur). Where the plaintiff cannot point to anything more than a physical or theoretical possibility, the defendant is entitled to a dismissal as a matter of right. *See W. T. Grant Co.*, 345 U.S. at 633; *Craig*, 163 F.3d at 485. Moreover, as this Court has noted, there is no concern that

the alleged violations will recur where the defendants have demonstrated "expeditious and thorough efforts to redress the problems." *Morris-Walker, Ltd*, 2017 WL 6209825, at *2; *Boitnott v. TCF Banking & Sav., F.A.*, CV 18-3062 (DSD/KMM), 2018 WL 6727067, at *2 (D. Minn. Dec. 21, 2018).

### A. Defendants Have Voluntarily Brought the Property into Compliance with the ADA.

Defendants removed all physical barriers alleged in the First Amended Complaint, and this case should be dismissed as moot.

The United States District Court for the District of Minnesota has ruled on—and dismissed—two cases with facts nearly identical to this case in the last eight months. *See Boitnott v. TCF Banking & Sav., F.A.*, CV 18-3062 (DSD/KMM), 2018 WL 6727067, at *2 (D. Minn. Dec. 21, 2018); *Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858 (D. Minn. 2019). In both cases, the plaintiff alleged violations of the ADA that were nearly identical to the alleged violations in Plaintiff's current First Amended Complaint. *Boitnott*, 2018 WL 6727067, at *2; *Border Foods, Inc.*, 361 F. Supp. 3d at 861–62. Further, in both cases, upon becoming aware of the alleged architectural barriers, the defendants took quick remedial actions to remove the barriers and bring the properties into compliance, as Defendants have done here. *Boitnott*, 2018 WL 6727067, at *2; *Border Foods, Inc.*, 361 F. Supp. 3d at 865–68. Given the defendants' swift and thorough actions, the presiding judges, Judge Wright and Judge Doty, determined that the defendants' remedial actions served to moot the plaintiffs' claims, and the plaintiffs therefore no longer had any "legally cognizable interest in the outcome." *Boitnott*, 2018 WL 6727067, at *2; *Border Foods,*

*Inc.*, 361 F. Supp. 3d at 868. As such, both cases resulted in this Court granting the defendants' motions to dismiss for lack of subject matter jurisdiction. *Boitnott*, 2018 WL 6727067, at \*2; *Border Foods, Inc.*, 361 F. Supp. 3d at 868. This case deserves the same result.

### 1.    *Defendants' Actions Following Service of the Original Complaint*

On May 30, 2019, in response to Plaintiff's Original Complaint, Defendants hired an auditor specialized in ADA compliance to inspect the Property and identify potential architectural barriers that may violate the ADA. (Mellado-Barboza Decl., ¶ 6) Pursuant to the results of this audit, Defendants promptly took steps to bring the Property into ADA compliance, and addressed each of the problems identified in the Original Complaint by June 23, 2019. (*Id.* at ¶ 7) Specifically, Defendants took the following measures to ensure compliance:

- Pursuant to Paragraph 21(a) of the Original Complaint: Defendants installed a handicap parking sign that designates one accessible parking space as van-accessible. Defendants then hired an auditor specializing in ADA compliance to confirm that the handicap parking signage at the Property now complies with the ADA. (Mellado-Barboza Decl., ¶ 6(a); Quarve-Peterson Decl., ¶ 8(a) & Ex. B);

- Pursuant to Paragraph 21(b) of the Original Complaint: Defendants installed four accessible seating locations throughout the interior dining area of the Property. Defendants further installed two accessible seating locations in the exterior patio seating area of the Property, so that at least five percent of the seating locations in both the interior and exterior of the Property are accessible. Defendants then hired an auditor specializing in ADA compliance to confirm that the Property's seating now complies with the ADA. (Mellado-Barboza Decl., ¶ 6(b); Quarve-Peterson Decl., ¶¶ 8(b)–8(c) & Ex. B);

- Pursuant to Paragraph 21(c) of the Original Complaint: Defendants hired an auditor specializing in ADA compliance to confirm that at least one of the two check-out sales counters located adjacent to one another is not higher than 36 inches above the

floor, in compliance with the 2010 ADA Standards 904.4.1. (Mellado-Barboza Decl., ¶ 6(c); Quarve-Peterson Decl., 7(a) & Ex. B);

- Pursuant to Paragraph 21(d) of the Original Complaint: Defendants installed a self-serving napkin dispenser with an unobstructed forward approach at a height that is not higher than 48 inches above the floor, in compliance with the 2010 ADA Standards 308.3. Defendants then hired an auditor specializing in ADA compliance to confirm that the napkin dispenser now complies with the ADA. (Mellado-Barboza Decl., ¶ 6(d); Quarve-Peterson Decl., ¶ 8(d) & Ex. B);

- Pursuant to Paragraph 21(e) of the Original Complaint: Defendants hired an auditor specializing in ADA compliance to confirm that the towel dispenser in the restroom was already mounted at or below 48 inches from the floor to the top operating mechanism, in compliance with the 2010 ADA Standards 308 and 309. (Mellado-Barboza Decl., ¶ 6(e); Quarve-Peterson Decl., ¶ 7(b) & Ex. B);

- Pursuant to Paragraph 21(f) of the Original Complaint: Defendants hired an auditor specializing in ADA compliance to confirm that the soap dispenser in the restroom was already mounted 43 inches from the floor to the top operating mechanism, in compliance with the 2010 ADA Standards 309. (Mellado-Barboza Decl., ¶ 6(f); Quarve-Peterson Decl., ¶ 7(c) & Ex. B);

- Pursuant to Paragraph 21(g) of the Original Complaint: Defendants modified the height of the mirror in the restroom, and hired an auditor who specializes in ADA compliance to confirm that the bottom edge of the mirror reflecting surface is not higher than 40 inches above the floor, in compliance with the 2010 ADA Standards 603.3. (Mellado-Barboza Decl., ¶ 6(g); Quarve-Peterson Decl., ¶ 8(e) & Ex. B);

- Pursuant to Paragraph 21(h) of the Original Complaint: Defendants purchased and installed new pipe-covers for the pipes below the lavatory in the restroom. Defendants then hired an auditor specializing in ADA compliance to confirm that the lavatory pipes and pipe-covers now comply with the 2010 ADA Standards 606.5. (Mellado-Barboza Decl., ¶ 6(h); Quarve-Peterson Decl., ¶ 8(f) & Ex. B);

- Pursuant to Paragraph 21(i) of the Original Complaint: Defendants hired an auditor specializing in ADA compliance to confirm that the bathroom lock in the restroom already had a shape that is easy to grasp with one hand and does not require tight grasping, pinching or twisting of the wrist to operate, in compliance with the 2010 ADA Standards 309.4. (Mellado-Barboza Decl., ¶ 6(i); Quarve-Peterson Decl., 7(d) & Ex. B);

- Pursuant to Paragraph 21(j) of the Original Complaint: Defendants hired an auditor specializing in ADA compliance to confirm that the side horizontal grab bar in the restroom already measured at least 42 inches long, is mounted 12 inches from the

rear wall, and extends 54 inches from the rear wall, in compliance with the 2010 ADA Standards 604.5.1 and 604.5.2. (Mellado-Barboza Decl., ¶ 6(j); Quarve-Peterson Decl., ¶ 7(e) & Ex. B);

- Pursuant to Paragraph 21(k) of the Original Complaint: Defendants hired an auditor specializing in ADA compliance to confirm that the self-serving shelf for bakery goods is on an accessible route and provides compliant maneuvering clearance to access the goods, in compliance with the ADA. Defendants further obtained confirmation from the auditor that self-service shelving, such as the self-service bakery shelf, is exempted from the height and reach range requirements of the 2010 ADA Standards Section 308. (Mellado-Barboza Decl., ¶ 6(k); Quarve-Peterson Decl., ¶¶ 6, 7(f) & Ex. B); and

- Pursuant to Paragraph 21(l) of the Original Complaint: Defendants hired an auditor specializing in ADA compliance to confirm that there exists an accessible route throughout the interior of Andale Mercado that is at least 36 inches wide, in compliance with the 2010 ADA Standards 403.5.1. (Mellado-Barboza Decl., ¶ 6(l); Quarve-Peterson Decl., ¶ 7(g) & Ex. B).

These actions served to remove all of the architectural barriers identified in the Original Complaint, and Plaintiff's Original Complaint was therefore moot. (Mellado-Barboza Decl., ¶ 7; Quarve-Peterson Decl., ¶9 & Ex. B) As such, on June 28, 2019, Defendants filed their Original Motion to Dismiss, seeking to dismiss the Original Complaint as moot. (ECF Nos. 4–11) Plaintiff responded to Defendants' Original Motion to Dismiss by filing his First Amended Complaint on July 19, 2019. (ECF No. 12)

2.    *Defendants' Actions Following Service of the First Amended Complaint*

The allegations in Plaintiff's First Amended Complaint are nearly identical to the allegations in his Original Complaint, with the exception of the allegations contained in Paragraph 21. In Paragraph 21 of the First Amended Complaint, Plaintiff acknowledges that the barriers identified in Paragraphs 21(a), (c), (d), (e), (f), (g), (h), and (j) of the

Original Complaint no longer exist.[4]  (*See* ECF No. 1-1, ¶¶ 21(a), (b), (d), (e), (f), (g), (h), (j); ECF No. 12, ¶¶ 21(a), (c), (d), (e), (f), (g), (h), (j))  Nevertheless, Plaintiff maintains that his First Amended Complaint is not moot because there are allegedly still barriers remaining on the Property as set forth in the second Paragraph (c)[5] and in Paragraphs 21(i), (k), and (l) of the First Amended Complaint.

Upon receiving Plaintiff's First Amended Complaint, Defendants again took swift actions to ensure that the Property was compliant with the ADA.  Specifically:

- Pursuant to Paragraph 21(b) of the First Amended Complaint: Defendants hired an auditor specializing in ADA compliance to inspect and confirm that there are no portions of the handicap accessible parking space or access aisle that are steeper than 1:48 (2%), in compliance with the 2010 ADA Standards 502.4.  (Mellado-Barboza Decl., ¶ 8; Quarve-Peterson Decl., ¶ 11(a) & Ex. C)

- Pursuant to the second Paragraph 21(c) of the First Amended Complaint: Defendants sought and received <u>additional</u> confirmation from an auditor specializing in ADA compliance that there is no requirement for sales counters to have 36 inches of "unobstructed" or "clear" length.  (Mellado-Barboza Decl., ¶ 8; Quarve-Peterson Decl., ¶ 11(b))  To the contrary, as numerous federal district courts have recognized, and as the Department of Justice has expressly explained, "neither Section 904.4.1 nor its exception requires clear counter space at sales and service counters subject to the ADA's requirements."  (Declaration of Joseph M. Windler,

---

[4] Although Plaintiff correctly recognizes in his First Amended Complaint that the barriers alleged in Paragraphs 21(a), (b), (d), (e), (f), (g), (h), and (j) of the Original Complaint do not exist, he incorrectly states that they all required remediation by Defendants.  As Defendants set forth in their Original Motion to Dismiss, the alleged barriers in Paragraphs 21(e), (f), and (j) of the Original Complaint were already ADA compliant as they currently existed, and thus did not require any remedial measures.  (*See* Quarve Peterson Decl., ¶¶ 7, 11)  To the extent that Plaintiff's statements in Paragraphs 21(e), (f), and (j) of the First Amended Complaint suggest that Defendants had to "remedy" these barriers, such statements are incorrect, as the barriers alleged in those paragraphs did not exist to begin with.

[5] Plaintiff mistakenly includes two Paragraphs 21(c) in his First Amended Complaint.  For clarity, Defendants will refer to the first Paragraph 21(c) as "Paragraph 21(c)", and the second Paragraph 21(c) as "the second Paragraph 21(c)".

filed August 2, 2019 ("Windler Decl."), Ex. 1 at pp. 5–6 ("Section 904.4.1 does not mention, let alone require, than an entity provide any particular amount of 'clear' counter space. . . . Moreover, because 904.4.1's length requirement does not mandate any particular amount of 'clear' counter space, Defendants have satisfied that requirement if their transaction counter, as built, equals or exceeds 36 inches in length.")) *See also Johnson v. Starbucks Corp.*, C 17-02454 WHA, 2019 WL 1427435, at *2-4 (N.D. Cal. Mar. 29, 2019) ("[A]s explained by the DOJ, Section 904.4.1 'does not mention, let alone require, that an entity provide any particular amount of 'clear' counter space[.]'"); *Kong v. Mana Investment Co.*, No. SA CV 18-01615-DOC (DFM) (S.D. Cal. May 1, 2019) ("Nothing in the plain language of § 904.4.1 or its exception suggests that any particular amount of 'clear' space on the surface of a sales or service [*sic*] is required."); *Francis v. 805 Columbus LLC*, No. 16 Civ. 7539 (PGG) (S.D.N.Y. March 7, 2019) ("As an initial matter, the regulation at issue here is unambiguous—it makes no mention of a 'clear' and 'unobstructed' counter surface. This Court cannot 'interpret' Section 904.4.1 so as to add a requirement that is not present in this provision. . . . The Court concludes that Section 904.4.1 does not require clear counters at least 36 inches in length."). Nevertheless, even though Defendants' sales counter was undisputedly already compliant with the ADA as it previously existed, Defendants took additional steps beyond those required by the ADA, and removed all items from the sales counter so that the counter now has 36 inches of clear and unobstructed space for handicap individuals to use. (Mellado-Barboza Decl., ¶ 9 & Ex. A; Quarve-Peterson Decl., ¶ 12 & Ex. D)

- Pursuant to Paragraph 21(i) of the First Amended Complaint: Defendants sought and received additional confirmation from an auditor specializing in ADA compliance that the lock on the restroom is compliant with the ADA because it can be opened with either a closed fist or open-palm hand, and therefore does not require any grasping, pinching, or twisting to use. (Mellado-Barboza Decl., ¶ 8; Quarve-Peterson Decl., ¶ 11(c))

- Pursuant to Paragraph 21(k) of the First Amended Complaint: Defendants sought and received additional confirmation from an auditor specializing in ADA compliance that, pursuant to the 2010 ADA Standards 225.2.2, self-service shelving outside of the food service line context is expressly exempted from the height and reach requirements set forth in the 2010 ADA Standards 308. (Mellado-Barboza Decl., ¶ 8; Quarve-Peterson Decl., ¶¶ 6, 11(d)) Defendants' self-serving bakery shelf, which is not part of a food service line, was therefore already ADA-compliant as it previously existed. *See* 2010 ADA Standards 225.2.2 ("Self-service shelving shall not be required to comply with 308. . . . Self-service shelves include, but are not limited to, library, store, or post office shelves."); U.S. Department of Justice, Civil Rights Division, *Disability Rights Section ADA Update: A primer for small business*, p. 15, *available at*

https://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.pdf ("[S]helves may be of any height since they are not subject to the ADA's reach range requirements."). Notwithstanding the fact that Defendants' self-service bakery shelf was already compliant with the ADA, Defendants took additional steps beyond those steps required by the ADA to make the self-service bakery shelf even more accessible for individuals with handicaps. Specifically, Defendants added a sign indicating that patrons may ask for, and Defendants' employees will provide, assistance for anyone who needs help accessing items in or on the self-service bakery shelf. (Mellado-Barboza Decl., ¶ 10; Quarve-Peterson Decl., ¶ 12 & Ex. D) In addition, Defendants permanently removed the rolling casters from the bakery shelf, thereby bringing the top shelf down to a height of less than 48 inches, and further relocated the self-service goods that were previously located on top of the bakery shelf to a new type of self-service shelving that is lower than 48 inches from the floor. (Mellado-Barboza Decl., ¶ 10 & Ex. B; Quarve-Peterson Decl., ¶ 12 & Ex. D)

- Pursuant to Paragraph 21(k) of the First Amended Complaint: Defendants sought and received <u>additional</u> confirmation from an auditor specializing in ADA compliance that the aisles and pathways to goods and services at Andale Mercado are at least 36 inches wide, in compliance with 2010 ADA Standards 403.5.1. (Mellado-Barboza Decl., ¶ 8; Quarve-Peterson Decl., ¶ 11(e))

In summary, Defendants have not only removed all of the alleged barriers in the Original Complaint and First Amended Complaint, they have taken additional steps beyond the requirements of the ADA to ensure the most convenient access possible. Defendants have therefore mooted all of the claims in Plaintiff's First Amended Complaint, and Plaintiff's claims should be dismissed the same way that the Court dismissed the mooted claims in *Boitnott*, 2018 WL 6727067, at *2 and *Border Foods, Inc.*, 361 F. Supp. 3d at 868.

### B.    The Alleged Conduct is Not Reasonably Likely to Recur.

Because Defendants have demonstrated that the Property has been brought into full compliance with the ADA, Plaintiff's claims are moot unless Plaintiff can point to something more than mere speculation that the violations will recur in the future.

*See Craig*, 163 F.3d at 485; *W. T. Grant Co.*, 345 U.S. at 633. Federal courts have repeatedly held that permanent or semi-permanent alterations sufficiently demonstrate that the complained-of harm cannot reasonably be expected to recur. *See Hillesheim v. Buzz Salons, LLC*, 2017 WL 3172870, at *8 (D. Minn. June 19, 2017), *report and recommendation adopted*, 2017 WL 3172751 (D. Minn. July 25, 2017) (finding that a wall-mounted toilet-paper dispenser was sufficiently permanent so as to show that the conduct was not reasonably likely to recur); *Scheman Dev.*, No. 15-CV-3041 (WMW/KM), at 8 (finding the remedy to be sufficiently permanent and not likely to recur where the defendant would have to take affirmative steps to cause recurrence); *Border Foods, Inc.*, 361 F. Supp. 3d at 866 (granting dismissal where the "alleged ADA violations will not recur unless Defendants take affirmative steps to remove or alter the ADA-compliant doors, accessible seating, and bathroom fixtures Defendants installed, which are permanent fixtures or features.").

Here, Defendants have made permanent alterations to ensure that they will remain in compliance with the ADA. For example, Defendants have permanently added insulation in the form of pipe-covers to the pipes below the lavatory, and have permanently relocated the position of the self-serving napkin dispenser and restroom mirror. (Mellado-Barboza Decl., ¶¶ 6(d), 6(g), 6(h); Quarve-Peterson Decl., ¶¶ 8(d)–8(f) & Ex. B) They have also taken additional steps beyond the requirements of the ADA, including removing the rolling casters from the self-serving bakery shelf to permanently lower the height of the entire unit. (Mellado-Barboza Decl., ¶¶ 9–10 & Exs. A–B; Quarve-Peterson Decl., ¶ 12 & Ex. D) As courts have noted, such affirmative steps constitute "far more than a mere voluntary

cessation of alleged illegal conduct" and thus demonstrate that there is no reasonable expectation that the offending conduct will recur. *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018) (quoting *Hickman v. State of Mo.*, 144 F.3d 1141, 1144 (8th Cir. 1998); *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975); *Border Foods, Inc.*, 361 F. Supp. 3d at 868. Indeed, this Court has expressly held that there is no concern that the alleged violations will recur where the defendants have demonstrated "expeditious and thorough efforts to redress the problems" as Defendants have done here. *Morris-Walker, Ltd*, 2017 WL 6209825, at *2; *see also Boitnott*, 2018 WL 6727067, at *2 ("Further, the court is not concerned that the alleged violations will recur given TCF's expeditious and thorough efforts to redress the problems raised in the complaint. As a result, the complaint is moot and must be dismissed."); *Border Foods, Inc.*, 361 F. Supp. 3d at 868.

Because Defendants have acted promptly and diligently to bring the Property into compliance with the ADA, the Court should grant Defendants' Motion.

## III. THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE ATTORNEYS' FEES AND COSTS UNDER 42 U.S.C. § 12205, 28 C.F.R. § 36.505, AND 28 U.S.C. § 1927.

Pursuant to 42 U.S.C. § 12205, "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual." 42 U.S.C. § 12205. Section 36.505 of the Code of Federal Regulations provides the same right to collect attorneys' fees. 28 C.F.R. § 36.505 ("In any action or administrative proceeding commenced pursuant to the Act or this part, the court

or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."). As such, "[t]he Court has discretion to grant attorney fees and costs to the prevailing party in a disability case." *Bergeron v. Nw. Publications, Inc.*, 1996 WL 210789, at *8 (D. Minn. Jan. 12, 1996). A prevailing defendant is entitled to attorneys' fees where the "plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* (internal quotation marks omitted).

Similarly, pursuant to 28 U.S.C. §1927, "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927. "Sanctions are proper under §1927 when the attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the Court." *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445 (8th Cir. 2001); *see also Disability Support All. v. Heartwood Enters., LLC*, 15-529 (PAM/FLN) (8th Cir. 2018) ("The question under § 1927 is whether 'the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of her duties to the Court.'").

Here, in the event that the Court finds Plaintiff's claims to be moot, Defendants are entitled to an award of attorneys' fees against Plaintiff under 42 U.S.C. § 12205 and 28 C.F.R. § 36.505. *See Bergeron*, 1996 WL 210789, at *8. Specifically, Defendants

request reimbursement for the attorneys' fees and costs incurred to bring this Motion and their Original Motion to Dismiss. The Eighth Circuit has held that attorneys are entitled to seek the attorneys' fees and costs incurred in litigating their claims to attorneys' fees. *See Jones v. MacMillan Bloedel Containers, Inc.,* 685 F.2d 236, 239 (8th Cir. 1982). Defendants will submit further detail regarding the attorneys' fees and costs incurred to this Court and will provide evidence to prove up these fees and costs upon the Court's resolution of this Motion.

Similarly, Defendants are entitled to an award of attorneys' fees against Plaintiff's counsel because counsel's conduct unnecessarily multiplied the proceedings in this case. In particular, the undersigned counsel for Defendants contacted Patrick Michenfelder and Chad Throndset on three separate occasions prior to filing Defendants' Original Motion to Dismiss, to counsel them that Defendants completely removed all of the architectural barriers identified in the Original Complaint. (Windler Decl., ¶¶ 4–8 & Exs. 2–3). During those conversations, Defendants' counsel also requested that, given Defendants' clear remediation of the alleged barriers and the recent judicial opinions from this Court,[6] Plaintiff's counsel dismiss their Original Complaint since the claims had become moot. (*Id.*) Notwithstanding Plaintiff's counsel's undeniable familiarity with the recent rulings of this Court and the nearly identical nature of the Original and First Amended Complaints

---

[6] Notably, given Mr. Michenfelder and Throndset's involvement as plaintiff's counsel in both *Boitnott v. TCF Banking & Sav., F.A.* and *Boitnott v. Border Foods, Inc.* (examined above), it is undisputed that they are familiar with and aware of this Court's stance on the removal of architectural barriers mooting a plaintiff's complaint, particularly as it relates to cases which involve allegations nearly verbatim to those contained in the Original and First Amended Complaints here.

to the two complaints in *Boitnott v. TCF Banking & Sav., F.A* and *Boitnott v. Border Foods, Inc.*, counsel refused without justification to dismiss the mooted Original Complaint. (*Id.*) Defendants were therefore required to incur the cost and expense of drafting and filing their Original Motion to Dismiss, which was effectively nullified by Plaintiff's choice to file his First Amended Complaint. This expense could have been avoided if Plaintiff's counsel would have simply filed its First Amended Complaint when Defendants informed them that the barriers had been removed, rather than requiring Defendants to go through the time and expense of drafting an entire motion related to a Complaint that Plaintiff intended to amend.

Moreover, in response to Defendants' counsel's repeated requests for clarification about what barriers in the Original Complaint Plaintiff purportedly believed still existed on the Property, Plaintiff's counsel provided only evasive responses and refused to identify any actual barriers or actions that Plaintiff believed Defendants needed to address in order to become ADA compliant. (*Id.*) These hide-the-ball, dilatory tactics only served to hinder Defendants' ability to achieve compliance with the ADA (to the extent that they were not already compliant, which Defendants believe they were and still are), which is supposed to be the goal for all parties in this litigation. Simply put, it is shocking and contrary to the purpose of the ADA[7] that disability rights attorneys and plaintiff would refuse to identify

---

[7] The ADA was enacted in 1990 to address discrimination against persons with disabilities in a number of areas, including in places of public accommodation, and to eliminate discrimination against disabled individuals and integrate them into the economic and social mainstream of American life. *See* 42 U.S.C. §§ 12101(a)(3), 12182(a); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001) (discussing the history and purpose of the ADA).

alleged architectural barriers where a small business offered to remedy any actual issues, while at the same time demanding a monetary payout. Indeed, Plaintiff's counsel's unreasonable refusal to engage in productive conversations about Defendants' remediation efforts is particularly egregious given the fact that Plaintiff himself admits in his First Amended Complaint that Defendants did, in fact, remedy the barriers alleged in eight different paragraphs of the Original Complaint, and Plaintiff therefore could have—and should have—at the very least agreed to dismiss those portions of his Original Complaint. (*See id.* at ¶ 9; ECF No. 12, ¶¶ 21(a), (c), (d), (e), (f) (g), (h), (j))

Following Defendants' filing of their Original Motion to Dismiss, Plaintiff filed his First Amended Complaint. In the interests of efficiency and confirming compliance, Defendants <u>again</u> contacted Plaintiff's counsel to notify Plaintiff that there were no architectural barriers on the Property, and to request that, given the lack of barriers, Plaintiff's counsel dismiss their First Amended Complaint since the claims had become moot. (Windler Decl., ¶ 10) As with Plaintiff's Original Complaint, Plaintiff's counsel responded with an unreasonable refusal to dismiss the First Amended Complaint, thereby necessitating Defendants to draft and file yet another Motion to Dismiss—the present Motion.

Given Plaintiff's unreasonable refusal to withdraw his mooted claims, and Plaintiff's counsel's unnecessary multiplication of the proceedings, which resulted in Defendants incurring attorneys' fees and costs, Defendants request that the Court award Defendants their reasonable attorneys' fees and costs against Throndset Michenfelder, LLC pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, and 28 U.S.C. § 1927.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant their Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction and award them their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, and 28 U.S.C. § 1927.

Dated:  August 2, 2019                    WINTHROP & WEINSTINE, P.A.


                                          By: *s/ Joseph M. Windler*
                                              Joseph M. Windler, #0387758
                                              Chelsea A. Ahmann, #0399146

                                          225 South Sixth Street
                                          Suite 3500
                                          Minneapolis, Minnesota 55402
                                          (612) 604-6400
                                          jwindler@winthrop.com
                                          cahmann@winthrop.com

                                          *Attorneys for Defendants*

17661548v1

21